SO ORDERED.

Dated: July 12, 2024

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

In re:  ) Chapter 7 Proceedings
 )
Kara Frances Jennings, ) Case No. 2:18-bk-11759-DPC
 )
Debtor. ) UNDER ADVISEMENT ORDER
 ) RE APPLICATION FOR
 ) ORDER TO SHOW CAUSE
 )

Alan and Mary Travis ("Buyers") filed an Application for Order to Show Cause Why Raymond Perea and Kara Jennings Should Not Be Required to Comply With the Order Approving Trustee's Motion to Sell Estate's Interest in Property and Approve Bidding Procedures ("OSC")[1] and an application for Temporary Restraining Order.[2] After a hearing, a Temporary Restraining Order ("TRO") was entered and the matter was set for an hearing on the OSC ("OSC Hearing") a week later.[3] Buyers filed their supplement to the OSC just before this Court's OSC Hearing. The Court took this matter under advisement following a hearing on June 21, 2024.[4]

The Court now denies the OSC and dissolves the TRO for the reasons stated below.

I.  **BACKGROUND**

Kara Frances Jennings ("Debtor") filed her voluntary chapter 7 bankruptcy petition on September 26, 2018 ("Petition Date"). After a bit of stumbling about, Debtor ultimately claimed as exempt her beneficial interest in a Nationwide Deferred Compensation Account ("Compensation Account"). The Compensation Account was owned by Debtor and Raymond

---
[1] The OSC was filed on June 10, 2024 at Docket Entry ("DE") 122.
[2] DE 135.
[3] DE 132.
[4] The Supplement was filed on June 21, 2024, at DE 141.

1

Perea ("Ex-Husband") at the time they were divorced in New Mexico prior to the Petition Date. The Compensation Account is held or managed by Voya. Under the terms of a Marital Settlement Agreement ("MSA") between Debtor and Ex-Husband, Debtor was to receive 100% of the Compensation Account funds up to $115,000. Ex-Husband was to receive any amount in the Compensation Account over $115,000. At the time of the MSA[5], the sum of $61,618.58 was held in the Compensation Account. The MSA acknowledged that, if there were insufficient funds in the MSA upon Ex-Husband's death, retirement, or by April 2024, the Ex-Husband or his estate would be required to make up the remaining amount to satisfy the $115,000 obligation to Debtor. In any event, the full $115,000 payment to Debtor would be due no later than April 2024.

The chapter 7 trustee in this case, Robert A. MacKenzie ("Trustee"), objected to the Debtor's exemption claimed in the Compensation Account and sought to sell the Debtor's right to receive the $115,000. The Court denied the Trustee's sale motion and overruled the Trustee's objection to the Debtor's claimed exemption in the Compensation Account.[6] The Court later granted the Trustee's motion for reconsideration, clarifying that the Trustee could sell Debtor's interests in the MSA to the extent it called for payments by the Ex-Husband to the Debtor over and above amounts she was to receive from the Compensation Account.[7]

Trustee then filed another sale motion. Buyers were the successful bidders at this Court's sale hearing. The Court entered its order[8] approving the sale to Buyers of the Debtor's interests in a cash payout[9] due from Ex-Husband over and above what is paid from the Compensation Account. To date, nothing has been paid on the MSA from the Compensation Account or from the Ex-Husband.

---

[5] The MSA was filed with the Court in the State of New Mexico, County of Sandoval, Thirteenth Judicial District ("State Court") on October 6, 2017.
[6] DE 56. This order shall be referred to herein as the "Exemption Order."
[7] DE 87. This order shall be referred to herein as the "Reconsideration Order."
[8] DE 103. This June 23, 2020 order shall be referred to herein as the "Sale Order."
[9] Any portion of the $115,000 due to Debtor from Ex-Husband pursuant to the MSA that is paid from sources other than the Compensation Account will be referred to herein as the "Cash Payout." This is not to be confused with the Buyers' "Cash Payout" term referenced in the OSC on page 2, ¶ 8 of DE 122 or the "Cash Payout" term referenced in the Reconsideration Order (DE 87) at page 9, line 12.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(2) and 11 U.S.C. §§ 363 and 541.

## III. ISSUE

The issue before this Court is whether a Cash Payout from Ex-Husband is due to Buyers.

## IV. ANALYSIS

This Court's Exemption Order made it clear that the Debtor's beneficial interests in the Compensation Account were exempt and that the Trustee's efforts to sell Debtor's rights to those interests were denied. When the Trustee's motion for reconsideration was filed, he made it clear he understood the Debtor's Compensation Account interests were exempt but still wanted to sell the Cash Payout, if any, due to Detor under the MSA. The Debtor did not object to Trustee's sale of the Cash Payout.

In their OSC, the Buyers apparently seek to distinguish between (a) the Debtor's rights to receive $115,000 in the event Ex-Husband died or retired before April 2024, and (b) the Debtor's rights to receive $115,000 after April 2024 where Ex-Husband had neither died nor retired by April 2024. Buyers suggest that should Ex-Husband die or retire before April 2024, Debtor would be entitled to receive up to $115,000 from the exempt Compensation Account but if Ex-Husband had survived to April 2024, and had not yet retired, Buyers would be entitled to receive the entire $115,000 whether paid from the Compensation Account or paid by Ex-Husband from any other sources. Buyers are mistaken.

The MSA agreed to by Debtor and Ex-Husband (well before the Petition Date) contemplates Debtor being paid $115,000 from the Compensation Account. Since less than $62,000 was held in the Compensation Account when the MSA was filed with the State Court, it was certainly possible that Ex-Husband would owe Debtor a Cash Payout in an amount totaling $115,000 less the amount in the Compensation Account when Debtor was to ultimately be paid, whether that payment date was established by Ex-Husband's (a) death, (b) retirement or (c) April

2024. As it turns out, April 2024 was the determinative benchmark and, by that time, the Compensation Account contained well over $115,000. Under the MSA, Ex-Husband is entitled to all amounts in the Compensation Account over $115,000 but Debtor is entitled to $115,000 from the Compensation Account. The entirety of the $115,000 paid from the Compensation Account is exempt in the hands of Debtor.

Significantly, Buyers purchased the Cash Payout "as is" with no warranties from the Trustee or the Court or anyone else. Buyers presumably read the Exemption Order, the Reconsideration Order and the Sale Order. The Reconsideration Order clearly spells out the result that would occur if and when Ex-Husband had neither died nor retired by the time April 2024 arrived and the MSA remained wholly unpaid. On page 9, lines 14-16 of the Reconsideration Order the Court noted:

> . . . Finally, if the MSA remains wholly unpaid by the time of the Ex-Husband's death or retirement or by the end of April 2024, the Compensation Account must be paid to Debtor in an amount up to $115,000. The Compensation Account payment to her would be exempt . . . .[10]

Nothing in the Sale Order altered this result. At the hearing on the Trustee's second sale motion, in a verbal exchange with the Trustee's counsel,[11] the Court reiterated this point when it said

> So, if the amount of the plan [i.e. the Compensation Account] [a] at the time of his death before retirement or [b] April 2024, if the amount in the account [Compensation Account] is something greater than $115,000, then the buyer of the estate asset receives nothing and if the account [i.e. the Compensation Account] is something less than $115,000, then all the buyer is left with is the delta [i.e. difference] they can collect from [Ex-Husband].

Buyers took a gamble when they paid the Trustee $21,000 for the Cash Payout in 2020. Had Ex-Husband died or retired at a time when the Compensation Account contained $60,000 or $70,000 or even $90,000, Buyers would have realized a tidy profit. Ex-Husband is, however, alive and well and the April 2024 payment due date has come and gone. Since the Compensation

---

[10] DE 87.

[11] It is worth noting that Buyers' law firm was also the Trustee's law firm before this case closed on December 14, 2020. The firm's lawyer who represented the Trustee is not the same lawyer now representing the Buyers.

Account now contains well over $115,000, Debtor is to receive her exempt $115,000 from the Compensation Account. This will fully satisfy Ex-Husband's $115,000 obligation under the MSA. All funds over $115,000 in the Compensation Account belong to Ex-Husband.

The Buyers, like the Trustee before them, argue that the distribution to Debtor from the Compensation Account will need to be first placed in a QDRO[12] account. Whether this is so or not did not alter the Court's view when deciding the Exemption Order[13] or the Reconsideration Order nor does the Court find this relevant to this present Order. $115,000 in the Compensation Account is now due to Debtor and that entire amount is exempt whether paid directly to her or paid into a QDRO for her benefit.

The Buyers also recite a litany of contacts Buyers made with Ex-Husband's employer and the Compensation Account manager (Voya) and the recordation of a lien claim by Buyers with the Arizona Secretary of State. None of Buyers' efforts terminated or otherwise inhibited or altered Debtor's rights to her exemption or her rights to receive the $115,000 due to her from the Compensation Account.

**IT IS ORDERED** dissolving this Court's TRO, denying Buyers' OSC, and permitting Debtor (or a QDRO established for her benefit) to receive $115,000 from the Compensation Account.

**DATED AND SIGNED ABOVE.**

---

[12] Qualified Domestic Relations Order.
[13] See DE 56 at page 7.